CHARLES JOHNSON, APPELLANT, v. PETER BUCKEL, RESPONDENT.

*Attachment — grounds thereof stated in the alternative, insufficient — an action upon contract on a claim not due — fraudulent representations alone will not support an attachment — there must be a fraudulent disposition of property.*

An attachment, granted at the suit of Charles Johnson against the property of Peter Buckel, stated the grounds upon which it was granted to be that "the defendant has removed, disposed of, assigned and secreted, and is about to remove, dispose of, assign and secrete, his property with the intent and design of defrauding his creditors."

Upon an appeal from an order vacating the attachment:

*Held,* that the recital could not support the attachment.

That it was inconsistent to allege that a debtor had removed his property, and then in the conjunctive that he was about to remove it.

That such an allegation must be directed to showing that the debtor had done one or the other of these acts.

The plaintiff Johnson attempted to recover upon nine causes of action, of which eight were promissory notes and the last a check. The complaint alleged that Johnson had been induced to discount the notes, seven of which were not then due, by the false representations of Buckel as to his solvency.

*Held,* that Johnson had an election to sue either on express contract or for fraud, in which latter case the debt would have become due at once.

That as he had chosen the former course, and as the notes were not due, he could not sustain the attachment.

Upon the question of fraud the affidavits of the plaintiff indicated fraudulent representations made by Buckel to Johnson as to his credit and resources, but did not prove any fraud in the actual disposition of Buckel's property which was, by real estate and chattel mortgages, given for *bona fide* debts.

*Held,* that fraudulent representations were not enough to sustain an attachment, but that there must also be satisfactory proof of a fraudulent appropriation of his property by the debtor with an intent to defraud his creditors.

APPEAL by the plaintiff Charles Johnson from an order of the Supreme Court, entered in the clerk's office of the city and county of New York on the 31st day of August, 1892, vacating an attachment issued against the property of the defendant.

*Henry Daily, Jr.,* for the appellant.

*Samuel Untermeyer* and *Moses Weinman,* for the respondent.

O'BRIEN, J.:

The attachment recites that the action is brought to recover the sum of $14,972 as damages for breach of an express contract other than a contract to marry, and states the ground of the attachment to be that "the defendant has removed, disposed of, assigned and secreted, and is about to remove, dispose of, assign and secrete his property with the intent and design of defrauding his creditors."

The Code (§ 636) requires, before procuring the warrant upon this ground, that it should be shown that the defendant "has assigned, disposed of or secreted, or is about to assign, dispose of or secrete," the property with intent to defraud creditors. Where, therefore, an attachment is sought upon the theory of a fraudulent disposition of all a debtor's property, the affidavits should be directed to showing that the debtor has done either one or the other; because the doing of both at the same time is necessarily inconsistent. In other words, if a debtor has assigned or disposed of his property, it eliminates the idea that he is about to assign and dispose of it. It is true that the warrant could be granted upon showing that a portion of the property had been disposed of, and that as to the balance the debtor was about to dispose of it.

Although in this case the conjunctive, and not the disjunctive, positions are sought to be upheld as ground for procuring the warrant, a similar inconsistency to that pointed out with respect to the Code provisions is here apparent. The recital, as already pointed out, is, that the defendant "has removed, disposed of, assigned and secreted, and is about to remove, dispose of, assign and secrete his property." It is plain that, if the affidavits sustain the recital that the defendant has removed and disposed of his property, it necessarily excludes the recital that he is about to remove and dispose of the same. This confusion of two separate and distinct things is noticeable in all the papers and in the argument

of counsel for appellant upon this appeal. Where the ground relied on is the fraudulent disposition of property, the affidavits should be directed to showing either that the property has been disposed of or that the debtor is about to dispose of his property, or that, with respect to some of it, he has disposed of it, and, with respect to other portions, he is about to dispose of it. But, as already said, it is inconsistent to assume the position that a debtor has disposed of his property, and in the next breath to assert that he is about to do so.

This failure of the plaintiff to place himself on definite ground is equally noticeable when we come to consider the theory of plaintiff's cause of action. He seeks to recover for breach of an express contract setting forth nine causes of action, eight on promissory notes and the ninth upon a check. At the time the action was commenced and the attachment issued against the defendant's property for $14,972, there had matured only the first note for $1,500 and the check for $1,000, these being the first and ninth causes of action stated in the complaint. With respect to the other seven causes of action, the notes were not due. For the purpose, however, of immediately suing upon all the causes of action the complaint contained a number of allegations showing that the plaintiff was induced to discount the notes by reason of the false and fraudulent representations of the defendant as to his solvency. There can be no doubt, upon a showing that fraud existed in procuring the money, that plaintiff had an election to sue either upon the express contracts — which would be the notes themselves and the check — or upon the debt, or he could sue to recover damages for fraud. In other words, he had an election to either sue upon the express contract or sue for the fraud. In the latter case the debt would become immediately due, while in the former the debt would become due according to the terms of the contract. The plaintiff, however, elected to sue upon the express contract; and, as already stated, as to seven of the causes of action, embracing the greater portion of the amount for which recovery was sought, the amounts, according to the terms of the express contracts, were not due. The plaintiff, in the affidavit used to support the attachment, reiterates these several causes of action and states that the $14,972, with interest, is due over and above all off-sets and counter-

claims; and yet, by the very statement, it is shown that there was then due but the sum of $2,500. This would necessarily be fatal to the attachment.

But apart from this, upon the main and principal ground of fraudulent disposition of property, no such case is made out as would justify the issuance of an attachment. For the purpose of showing the fraud committed upon him the plaintiff has built up a case of fraudulent representations by stating that at the time he advanced the money for the notes Abraham Solomon and Wolf Levy, from whom plaintiff obtained them, stated to him that the defendant had told them that he was perfectly solvent and able to pay all his debts; that he wished to use the money for these notes for the purchase of malt and hops to use in his brewery for the manufacture of malt and beer, and that the notes would be paid at maturity; and that they also stated to plaintiff, at the time he received the notes and advanced the money for them, that the defendant had told them that he was worth $250,000 over and above all his debts, that he was doing a prosperous business, and that his brewery property was only incumbered by the purchase-money mortgage of $80,000. To demonstrate the falsity of these statements, it is shown that, in addition to this $80,000, there was another mortgage unrecorded at the time the notes were delivered for $89,000, and that, although the defendant had stated that there was no chattel mortgage on his personal property, he, subsequent to the delivery of the notes to plaintiff, mortgaged the personal property and chattels in and about his brewery for $87,038. In addition, the plaintiff shows that twenty-six chattel mortgages on property in this city, on which there was unpaid the sum of $17,085, were in July, 1892, which was a period subsequent to the delivery of the notes to plaintiff, assigned and transferred to one Ennis. In addition is a statement that about the time he received, or was receiving the money from the plaintiff, defendant sold and disposed of a large number of casks and other personal property connected with his brewery, receiving the money therefor.

From these statements the plaintiff argues that two conclusions are to be drawn: (1.) Fraud in procuring him to discount the notes by reason of such representations as to solvency having been false and untrue. (2.) That the placing of these mortgages or the record-

ing of the $89,000 mortgage on the real estate, and the giving of the chattel mortgages, together with the sale of the casks, are evidence of the fraudulent disposition of property. Upon plaintiff's theory both of these should be made out; it being essential to plaintiff's right to immediately sue the defendant and have the notes immediately payable, although, by their terms, they had not matured, to show fraud in procuring the credit, and for the purpose of obtaining the attachment, the fraudulent disposition had necessarily to be made out.

We think, however, that a moment's reflection will develop another inconsistency in the attitude thus assumed by the plaintiff. If the representations were false, in that the defendant was indebted to the various persons to whom these mortgages were given, and instead of having assets exceeding his liabilities he was insolvent, then the consideration supporting the giving of the mortgages is shown. While, if the defendant then had the property which he subsequently, by means of chattel mortgages or mortgages on the real estate, sought to fraudulently divert from his creditors, then the theory of false representations essential to enable the plaintiff to elect to sue at once, without awaiting the maturity of the notes, would be taken away.

Thus is presented a question similar to that in the cases of *Kibbe* v. *Herman* (51 Hun, 438); *Fleitmann* v. *Sickle* and *Cæsar* v. *Sickle* (13 N. Y. St. Rep., 399). In *Kibbe* v. *Herman* the attachment was issued upon the ground of fraudulent disposition of property, and in the affidavit, used in procuring the attachment, charges of fraudulent representation and fraudulent misappropriation of property were mingled. In that case it was held : " That the attachment would not be upheld unless, in addition to the proof of fraudulent representation, the charge upon which the attachment was granted, namely, the fraudulent misappropriation of property to defeat the claims of creditors, was sustained by satisfactory evidence of the debtors having been possessed of such property."

The court saying further : " We have held in the cases of *Fleitmann* v. *Sickle* and *Cæsar* v. *Sickle* (13 N. Y. St. Rep., 399) that, in applications of this character, where charges of fraudulent representations and fraudulent appropriation of property are mingled, the attachment will not be upheld unless, over and above the charge

of fraudulent representations, it appears that the ground upon which the attachment was granted, namely, the fraudulent appropriation of property to defeat creditors, is sustained by satisfactory evidence."

It will be noticed that the affidavits, in supporting the view that defendant misrepresented his financial condition, do not, nor could they consistently, attack the good faith of the indebtedness for which the mortgages were given. The conclusions and inferences to be drawn therefrom are that, while sufficient to support the theory of fraudulent representations, they are clearly insufficient as regards fraudulent disposition of defendant's property. Even with respect to the fraudulent representations, these not having been shown to have been made to the plaintiff, nor to Solomon and Levy, for the purpose of having them communicated to the plaintiff, a serious question is presented as to plaintiff's right to repudiate the credit and thus enable him to sue for fraud. It is unnecessary, however, to place our decision upon this ground, because, as we have pointed out, the fraudulent disposition of property by the defendant not having been shown, this alone was fatal to plaintiff's right to an attachment.

We are of opinion, therefore, that the disposition made by the learned judge below was correct, and that the order appealed from should be affirmed, with costs and disbursements.

Van Brunt, P. J., and Lawrence, J., concurred.

Order affirmed, with costs and disbursements.